# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

KIDANE B. MENGESHA,

      Plaintiff,

v.                                CASE NO. 3:16-cv-446-MCR-GRJ

MARCUS J. STOKES, et al.,

      Defendants.

_____/

## ORDER & REPORT AND RECOMMENDATION

    This matter is before the Court on ECF No. 39, Defendants' Motion for Summary Judgment,[1] and ECF No. 46, Plaintiff's Motion for Leave to File an Amended Complaint. Plaintiff has filed a response in opposition to Defendants' motion for summary judgment. (ECF No. 53.)[2] Defendants,

_____

[1] Defendants Jones, Pugh, Stokes, and West originally filed the motion for summary judgment. (ECF No. 39.) Once Defendant Lathan was served—after Defendants filed the motion for summary judgment—Defendant Lathan filed a notice adopting Defendants' motion for summary judgment. (ECF No. 50.) Accordingly, the motion for summary judgment is deemed filed on behalf of all Defendants in this case.

[2] Plaintiff's response was due by August 23, 2017. (ECF No. 48.) Plaintiff, however, did not file his response until September 22, 2017. (ECF No. 53.) Plaintiff represents that he suffered a "psychological emergency" which put him on self-harm observation. By the time he was released from observation, however, the deadline had passed. Plaintiff requests the Court to consider the evidence attached to his response in ruling on Defendant's motion for summary judgment. The Court therefore construes Plaintiff's request as a motion for leave to file an untimely response in opposition to Defendant's motion for summary judgment. Defendants have not filed a response in opposition and the time for doing so has expired. Accordingly, the Court concludes that

however, have not filed a response to Plaintiff's motion for leave to file an

amended complaint and the time for doing so has expired.[3] The motions

are therefore ripe for review. For the reasons discussed below, Plaintiff's

motion for leave to file an amended complaint is granted and it is

respectfully recommended that Defendants' motion for summary judgment

should be granted in part and denied in part.

## I. MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

Plaintiff filed his motion for leave to file an amended complaint while

Defendants' motion for summary judgment was pending. (ECF No. 46.)

Defendants have not filed a response in opposition to Plaintiff's motion.

The Court therefore considers the motion for leave to amend to be

unopposed.

Plaintiff's proposed amended complaint names the same five

Defendants as the original complaint. The proposed amended complaint

clarifies that the claims are asserted against Defendants in their official and

individual capacities. The factual allegations are substantially the same.

Plaintiff's proposed amended complaint also contains the same claims as

---

Plaintiff has shown excusable neglect and good cause and his request to consider the
evidence as timely filed is therefore granted.

[3] Plaintiff filed his motion for leave to file an amended complaint on July 17,
2017. (ECF No. 46.)

the original complaint, except that he has combined his two excessive

force claims into one excessive force claim in the proposed amended

complaint.[4] Finally, Plaintiff seeks the same amount in compensatory

damages and punitive damages. The only difference is that the proposed

amended complaint contains a request for the Court to "[g]rant such other

relief as it may appear that the Plaintiff is entitled." (ECF No. 46 at 7.)

The proposed amended complaint does not affect the substantive

resolution of the pending motion for summary judgment because the

Defendants and claims are identical to those in the original complaint.

Additionally, Defendants have not objected to Plaintiff's motion for leave to

file the proposed amended complaint. Finally, although Plaintiff's new

request for any other relief the Court deems proper (i.e., nominal damages)

goes directly to several arguments set forth in Defendants' motion for

summary judgment, the interests of justice and efficiency weigh in favor of

granting Plaintiff's motion for leave to amend. *See* Fed. R. Civ. P. 15(a)(2).

Accordingly, Plaintiff's motion for leave to file the amended complaint

is granted and the amended complaint, ECF No. 46, shall become the

---

[4] The original complaint separated Plaintiff's excessive force claim into two
separate claims—count 2 against Defendant Stokes for failing to intervene in the other
Defendants' use of excessive force, and count 3 against Defendants Pugh, West,
Lathan, and Jones for excessive force. (ECF No. 1 at 10.) The proposed amended
complaint simply combines the two claims into one claim against all Defendants for
excessive force and failing to intervene. (ECF No. 46 at 6.)

operative complaint in this matter. The motion for summary judgment is therefore carried over to Plaintiff's amended complaint. *See Reflectone, Inc. v. Farrand Optical Co.*, 862 F.2d 841, 846 (11th Cir. 1989) (affirming district court's decision to carry pending motion for summary judgment over to an amended complaint when the allegations in the amended complaint did not affect arguments in the summary judgment motion); *Scroggins v. LifePoint Health*, No. 2:16-CV-338-WKW, 2016 WL 9275449, at *1 (M.D. Ala. Aug. 3, 2016) (carrying over motion for summary judgment to amended complaint filed while motion for summary judgment was pending because amended complaint did not affect the substantive resolution of the motion for summary judgment).

## II. MOTION FOR SUMMARY JUDGMENT

## A. BACKGROUND

Plaintiff, an inmate in the custody of the Florida Department of Corrections ("FDOC") at Santa Rosa Correctional Institution ("Santa Rosa CI"), initiated this case by filing a *pro se* complaint pursuant to 42 U.S.C. § 1983. Plaintiff claims Defendants—all employees of the FDOC at Santa Rosa CI—violated his Fourteenth Amendment rights by discriminating against him and making degrading racial comments to Plaintiff. He also claims Defendants used excessive force against Plaintiff on February 25,

2016, and sexually assaulted him in violation of the Eighth Amendment.[5]

## B. EVIDENCE

### 1. Medical History

Plaintiff has a history of shoulder dislocations. To start, on November 26, 2013, Plaintiff reported to medical with complaints of right shoulder dislocation while exercising. (ECF No. 39-1 at 87 ("MR/Maier Dec.").) Plaintiff stated he heard a pop sound while doing push ups. (*Id.*) Plaintiff was issued health passes for a low/bottom bunk and an arm sling. (*Id.* at 107.)

Plaintiff also presented to Medical on January 23, 2014, and February 6, 2014, with complaints of left shoulder pain, reporting that he had a history of front left shoulder dislocation dating back to 2007. (*Id.* at 112–13.) X-rays of Plaintiff's left shoulder on February 19, 2014, revealed post-traumatic osteolysis of the distal clavicle, but no fractures, dislocation, or subluxation. (*Id.* at 111.)

Plaintiff returned to medical on October 20, 2014, with complaints of left shoulder pain, again reporting a history of left shoulder pain. (*Id.* at 84.)

---

[5] Plaintiff's claims pertaining to sexual assault are only asserted against Defendants Pugh, West, and Lathan.

## 2.    Use of Force

At approximately 8:30 p.m. on February 25, 2016, Defendants ordered Plaintiff to submit to hand restraints in order to leave his cell to shower. (ECF No. 53 at 19, 14:25, 15:1–5; MR/Maier Dec. at 105.) As Plaintiff exited his cell to comply, Defendant Pugh told Plaintiff to kneel down so he could put leg irons on Plaintiff's ankles. (ECF No. 53 at 19, 15:5–7.) Plaintiff asked why the leg irons were necessary. (*Id.* at 15:7–10.) Defendant Pugh said "[d]on't you forget you assault[ed] my officer last year," then began calling Plaintiff an "Ethiopian piece of shit." (*Id.* at 15:10–13.) Defendant West interjected, making fun of Plaintiff for being skinny because he is Ethiopian. (*Id.* at 20, 17:3–8.)

In light of Defendants' comments, Plaintiff decided he no longer wanted to take a shower and took a step back towards his cell. (*Id.* at 17:8–9, 20:4–5.) Defendant Pugh used both hands to push Plaintiff into the cell with "extreme force." (*Id.* at 20:7–16.) Plaintiff fell down and hit his shoulder on the table, which caused his shoulder to dislocate. (*Id.* at 20:18–25, 21 at 21:1–6.) Plaintiff laid on the floor screaming from shoulder and back pain. (*Id.* at 21, 21:5–6.) Defendants Pugh and West ignored Plaintiff's cries for medical help and shut the cell door. (*Id.* at 24, 35:10–12.)

Approximately thirty minutes after the incident, Nurse Danley went to

Plaintiff's cell to check on Plaintiff. (*Id.* at 27, 45:5–9; MR/Maier Dec. at

105.) Plaintiff was lying on the cell floor complaining he had back pain and

could not stand. (MR/Maier Dec. at 105.)

When Nurse Danley left, Defendant Stokes ordered Plaintiff to stand

up and exit the cell. (ECF No. 53 at 27, 47:14–19.) Plaintiff told Defendant

Stokes he could not get up because his arm was dislocated. (*Id.* at

47:6–8.) Defendant Stokes threatened Plaintiff that if he did not come out

of the cell Plaintiff would wish he had died starving in Ethiopia. (*Id.* at

48:2–11.) Plaintiff, however, could not get up because he was in pain. (*Id.*

at 48:12–16.)

Defendants Pugh, West, and Lathan opened the cell door and began

beating Plaintiff. (*Id.* at 48:18–23.) Defendant Stokes remained outside the

cell blocking the door. (*Id.* at 28, 49:3–13.) Defendant West grabbed and

twisted Plaintiff's dislocated arm, causing Plaintiff's shoulder to pop back

into the socket and his finger to bend painfully. (*Id.* at 52:9–15, 29 at

54:6–25.) Defendants Pugh, West, and Lathan continued kicking and

punching Plaintiff. (*Id.* at 29.)

During the assault, one of the Defendants pulled down Plaintiff's

boxers—which was all he was wearing at the time. (*Id.* at 30, 57:1–20.)

Plaintiff felt one of the Defendants' fingers go between his buttocks and touch—but not penetrate—his anus. (*Id.* at 59:23–25, 60:1–6, 64:4.) Then a hand went between Plaintiff's legs and grabbed Plaintiff's testicles. (*Id.* at 64:5–25, 32 at 65:1–25, 66:1–25.) Plaintiff does not know who touched his genitals or buttocks, but only felt one hand. (*Id.* at 31, 62:20, 63:23.) The touching lasted approximately three to four seconds. (*Id.* at 32, 65:03–10.)

Eventually, Defendants lifted Plaintiff up, pulled up Plaintiff's boxers, and turned Plaintiff to face Defendant Stokes. (*Id.* at 67:4–6.) Defendant Stokes, however, told the other Defendants to put Plaintiff down and continued beating Plaintiff. (*Id.* at 67:7–8.) Defendants Pugh, West, and Lathan dropped Plaintiff back onto the ground and continued beating Plaintiff for a few moments. (*Id.* at 67:9–24.)

Defendant Jones then arrived with a wheelchair. (*Id.* at 68:8–15.) Defendants lifted Plaintiff up and put him in the wheelchair. (*Id.* at 68:16–22.) Once Plaintiff was in the wheelchair, one of the Defendants—which Plaintiff thinks was Defendant Jones—punched Plaintiff. (*Id.* at 33, 69:4–25, 71:1–14.) Defendants then brought Plaintiff to medical for examination. (*Id.* at 71:20–22; MR/Maier Dec. at 105.)

Examination at approximately 9:15 p.m. revealed a bruise and swelling on the right side of Plaintiff's forehead. (MR/Maier Dec. at

105–06.) Plaintiff also had a small abrasion on his lower lip. (*Id.*) There were no other injuries noted. (*Id.* at 105.) After the examination Plaintiff walked back to his cell without difficulty and with no signs of distress. (*Id.*)

Plaintiff, however, declared a medical emergency at approximately 2:54 a.m. on February 26, 2016. (*Id.* at 29.) He reported that his shoulder and back hurt and requested his injuries be documented. (*Id.*) Nurse Deily completed a cell-front examination because security refused to pull Plaintiff out of his cell due to disruptive behavior and threats to staff. (*Id.*) Plaintiff had no shortness of breath, no signs of acute distress, and no active bleeding. (*Id.*) Plaintiff demonstrated a full range of motion in all extremities. (*Id.*) He did, however, have minor swelling to his right forehead, but no other injuries. (*Id.*)

Plaintiff then declared another medical emergency at approximately 8:00 a.m., claiming that his right shoulder was dislocated and his arm and finger broken from the use of force last night. (*Id.* at 27.) Examination revealed no swelling, no deformities, intact skin, no evidence of fracture, and no dislocations. (*Id.*)

Plaintiff later presented to medical at approximately 10:40 a.m., claiming that his shoulder was dislocated the night before from the use of force incident. (*Id.* at 103.) Plaintiff reported that his shoulder goes in and

out. (*Id.*) Plaintiff displayed no signs or symptoms of distress, no deformities or injuries were noted, and examination revealed a full range of motion. (*Id.* at 103–04.)

Plaintiff declared a medical emergency on February 28, 2016, at approximately 8:50 a.m., reporting back and shoulder pain from the use of force incident. (*Id.* at 22.) Plaintiff refused, however, to be properly cuffed by security to go to medical. (*Id.*) Plaintiff had a shirt on despite claims that he could not move his arms at all. (*Id.*) There were no visual abnormalities noted and Plaintiff's shoulder height was even. (*Id.*)

At 12:30 a.m. the next morning, Plaintiff declared another medical emergency claiming that both of his shoulders were dislocated. (*Id.* at 25.) Examination revealed no swelling, no deformities, intact skin, a full range of motion in both arms, no signs of distress, and no dislocations. (*Id.*) Due to the lack of emergency, Plaintiff was instructed to submit a sick call request. (*Id.*)

Accordingly, Plaintiff submitted a sick call request and was examined at approximately 10:00 a.m. (*Id.* at 20–21.) Plaintiff reported that his left shoulder dislocated the night before. (*Id.*) Examination revealed no swelling, no change in pain with mild palpation, no visible redness or edema, and no bruising. (*Id.*) Plaintiff's left and right shoulder were equal in

size and height and Plaintiff could bend and straighten his arm. (*Id.*)

Plaintiff submitted a sick call request on March 16, 2016, claiming that his shoulder dislocated two weeks ago and every time he moves it comes out of the socket. (*Id.* at 17.) He also claimed his finger and back were broken. (*Id.*) Plaintiff was seen in medical later that day, at which time he reported that his right shoulder popped out while working out and went back in by itself. (*Id.* at 18.) No injuries were noted. (*Id.*)

Albert Carl Maier, M.D., Senior Physician for the FDOC, reviewed Plaintiff's medical records from November 2013 through August 2016. (*Id.* at 1, ¶¶ 1, 3.) According to Dr. Maier, with respect to shoulder dislocations,

> it is axiomatic at the time of initial shoulder dislocation the affected shoulder be strictly and totally immobilized for a minimal period of 2–3 weeks to permit healing of the rotator cuff ligaments which maintain the shoulder placement in the acromial fossa. If this strict immobilization is not provided, the affected shoulder will not heal properly and the instant ligaments remain sufficiently lax to fail to secure the humeral head in the shoulder joint. This will predispose the untreated shoulder to repetitive dislocation with even the most minor of traumas in the future and ultimately necessitate corrective surgery reconstruction of the rotator cuff to re-establish shoulder stability.

(*Id.* at 2, ¶ 4.)

Dr. Maier attests[6] that Plaintiff's medical records,

---

[6] Dr. Maier submitted his unsworn declaration under penalty of perjury.

show minimal notations of forehead bruise/abrasion, but no suggestion of anything more than the patient's usual and longstanding unstable shoulders and no documented assessments of any hand/wrist/head/concussive/visual injuries. [Plaintiff] was evaluated regularly and repetitively during the time after his alleged[] staff assault by multiple medical providers who uniformly failed to document any injuries of manifest substance.

(*Id.* at 4, ¶ 16.)

Plaintiff says he has suffered physical and emotional damages from the February 25, 2016 assault. (ECF No. 53 at 5.)[7] He had occasional minor pain in his shoulder before the assault, but now his "right shoulder is totally out of use because a very small movement is causing [him] unbearable pain." (*Id.*) He cannot lift any substantial weight or perform any physical tasks without dislocating his shoulder. (*Id.*) Plaintiff also has sharp pains in his right side, constant headaches, occasional blurred vision, and back pain from the assault. (*Id.*) In addition, Plaintiff says he feels like less of a man and is emotionally damaged from the sexual assault. (*Id.*)

## C.  STANDARD OF REVIEW

The entry of summary judgment is appropriate only when the Court is satisfied "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).

---

[7] Plaintiff submitted his unsworn declaration under penalty of perjury.

In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta,* 846 F.2d 1328, 1330 (11th Cir. 1988). But, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013) (internal quotations and citations omitted); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986) (to defeat summary judgment "there must be evidence on which the jury could reasonably find for the plaintiff") "The nonmovant need not be given the benefit of every inference but only of every reasonable inference." *Brown v. City of Clewiston,* 848 F.2d 1534, 1540 n.12 (11th Cir. 1988) ("The summary judgment standard requires that we resolve all reasonable doubts in favor of the non-moving party, but it does not require us to resolve all doubts in such a manner.").

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this

score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785–86 (11th Cir. 2005). In civil actions filed by inmates, federal courts,

> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgement stage.

*Beard v. Banks,* 548 U.S. 521, 530 (2006). Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact. *See, e.g., Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

## D.  DISCUSSION

Defendants argue they are entitled to Eleventh Amendment immunity for monetary damages in their official capacities. (ECF No. 39.) Defendants

also argue that Plaintiff's claims against them in their individual capacities should be dismissed without prejudice because Plaintiff is not entitled to compensatory or punitive damages without the prior showing of a physical injury or commission of a sexual act and because Plaintiff did not request nominal damages.

### 1. Eleventh Amendment Immunity

A suit against a state official in his official capacity is a suit against the State itself. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment prohibits a suit against the State absent the State's consent to the suit. *Alabama v. Puch*, 438 U.S. 781, 782 (1978). Florida has not waived its sovereign immunity or consented to be sued in damage suits brought under § 1983. *See* § 768.28(18), Fla. Stat.; *Gamble v. Fla. Dep't of Health & Rehabilitative Servs.*, 779 F.2d 1509, 1515 (11th Cir. 1986). Accordingly, to the extent Plaintiff's claims are interpreted as bringing suit for damages against Defendants in their official capacities, Defendants are entitled to summary judgment.

### 2. Damages

Under the Prison Litigation Reform Act ("PLRA"), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody

without a prior showing of physical injury or the commission of a sexual act

as defined in section 2246 of title 18)." 42 U.S.C. § 1997e(e). "[T]he

physical injury must be more than de minimis, but need not be significant."

*Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999), *vacated*, 197 F.3d

1059, *reinstated in relevant part*, 216 F.3d 970, 972 (11th Cir. 2000); *see*

*Thompson v. Sec'y, Fla. Dep't of Corr.*, 551 F. App'x 555, 557 n.3 (11th

Cir. 2014) (noting that the Eleventh Circuit has not adopted a definition of

"de minimis," but acknowledging "one court has described it as 'a physical

injury is an observable or diagnosable medical condition requiring

treatment by a medical care professional'") (quoting *Luong v. Hatt*, 979 F.

Supp. 481 (N.D. Tex. 1997).

In the Eleventh Circuit, "[t]he meaning of the phrase 'greater than de

minimis,' however, is far from clear." *Chatham v. Adcock*, 334 F. App'x

281, 284 (11th Cir. 2009); *compare Mann v. McNeil*, 360 F. App'x 31, 32

(11th Cir. 2010) (plaintiff's claims for compensatory and punitive damages

were barred by § 1997e(e) where plaintiff complained of vague injuries to

his back and scrapes and marks on his knees and legs), *and Quinlan v.*

*Personal Trans. Servs., Co.*, 329 F. App'x 246, 249 (11th Cir. 2009)

(pretrial detainee's complaints of headaches, difficulty breathing, temporary

chest pain, and lingering back pain were not greater than de minimis

injuries), *with Jenkins v. Hutcheson*, No. 6:14-cv-81, 2016 WL 4496561, at

*13 (S.D. Ga. June 22, 2016), *report and recommendation adopted*, 2016

WL 4491850, at *1–2 (S.D. Ga. Aug. 25, 2016) (denying summary

judgment on plaintiff's excessive force claim where plaintiff said he

suffered lacerations, bruising, swelling, migraines, and numbness in his

hands because a reasonable jury could find the injuries to be more than de

minimis), *and Cotney v. Bowers*, No. 2:03-cv-1181-WKW, 2006 WL

2772775, at *7 (M.D. Ala. Sept. 26, 2006) (plaintiff's testimony that he

suffered bruises to his ribs from officer's use of force and that the bruises

healed after several weeks without treatment surmounted PLRA's de

minimis injury bar because plaintiff put forth evidence from which a jury

could determine his physical injuries were more than de minimis).

Discomfort does not equate to physical injury. *Dixon v. Toole*, 225 F. App'x

797, 799 (11th Cir. 2007).

### a. *Excessive Force*

The Eighth Amendment provides the right to be free from cruel and

unusual punishment. U.S. Const. amend. VIII. The use of excessive

physical force against a prisoner may constitute cruel and unusual

punishment in violation of the Eighth Amendment. *Hudson v. McMillian*,

503 U.S. 1, 4 (1992); *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir.

1999). "In Eighth Amendment excessive force cases, the 'core judicial inquiry' is 'not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Bowden v. Stokely*, 576 F. App'x 951, 953 (11th Cir. 2014) (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)). Five factors should be considered in determining whether force was used sadistically and maliciously:

> (1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them.

*Campbell*, 169 F.3d at 1375 (quotations and citations omitted).

"When we consider whether the jailers' use of force was excessive, we must 'give a wide range of deference to prison officials acting to preserve discipline and security.'" *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 1990) (quoting *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990)). "Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." *Bennett*, 898 F.2d at 1533. "Eighth Amendment claims based on *de minimis* uses of physical force by prison guards are not cognizable

unless they involve 'force that is repugnant to the conscience of mankind.'"
*Johnson v. Moody*, 206 F. App'x 880, 884–85 (11th Cir. 2006) (quoting *Hudson*, 503 U.S. at 9–10). "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins*, 559 U.S. at 37.

Defendants have failed to demonstrate that they are entitled to summary judgment on Plaintiff's excessive force claims. Plaintiff says—under penalty of perjury—that the assault occurred. Defendants have submitted no evidence demonstrating that the assault did not occur, or otherwise challenging Plaintiff's version of events. If the assault occurred as Plaintiff says it did, a reasonable jury could find that force was utilized for no reason and therefore used sadistically and maliciously. *See Wilkins*, 559 U.S. at 40 (concluding that to prevail, plaintiff would "have to prove not only that the assault actually occurred but also that it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline'").

A reasonable jury could also conclude that Plaintiff's injuries were more than de minimis. Defendants do not deny that Plaintiff's shoulder was dislocated during the incident, nor do they deny that Plaintiff was in severe

pain. Although Plaintiff may have had no visible shoulder injuries when Nurse Danley examined Plaintiff at medical forty-five minutes after the incident, the evidence demonstrates that Plaintiff's shoulder popped back into the socket before he was transported to medical.[8] A separated shoulder arguably constitutes more than a de minimis injury. While Plaintiff's propensity for shoulder dislocations may go to the amount of force used, a mere history of shoulder dislocations does not negate the fact that his shoulder was dislocated. *See Rodriguez v. Farrell*, 280 F.3d 1341, 1353 (11th Cir.2002) ("[w]hat would ordinarily be considered reasonable force does not become excessive force when the force aggravates (however severely) a pre-existing condition the extent of which was unknown to the officer at the time").

Accordingly, because a reasonable jury could find that Plaintiff's injuries rise above the de minimis level, Defendants are not entitled to summary judgment on Plaintiff's excessive force claims. *See Goodwin v. Hatten*, No. 1:07-cv-00123-MP-AK, 2010 WL 750290, at *4–5 (N.D. Fla. Mar. 1, 2010) (denying summary judgment on excessive force claim where plaintiff's medical records corroborated his claim that he suffered rib pain

---

[8] When Nurse Danley went to Plaintiff's cell after the incident, Plaintiff was lying on the floor and said he could not stand. The evidence does not demonstrate that Nurse Danley entered Plaintiff's cell and conducted an examination at that point.

and difficulty breathing following assault by prison guard because genuine issue of material fact existed as to whether the alleged assault occurred and whether plaintiff's injuries were more than de minimis such that he may pursue a claim for mental or emotional injury in addition to his physical injuries).

Furthermore, even if Plaintiff's injuries do not rise above the de minimis level, Plaintiff's amended complaint requests "such other relief as it may appear that . . . Plaintiff is entitled." (ECF No. 46 at 7.) The Court construes this open-ended request to include nominal damages. *See Boxer X v. Donald*, 169 F. App'x 555, 559 (11th Cir. 2006) (concluding that request for compensatory damages and "any other relief the court deems appropriate" included nominal damages); *Hughes v. Lott*, 350 F.3d 1157, 1162 (11th Cir. 2003) (district court must analyze the pleading to determine whether the complaint includes a request for nominal damages before dismissing a complaint without prejudice for lack of physical injury). Accordingly, Defendants' motion for summary judgment on Plaintiff's excessive force claims should be denied.

### b. Sexual Assault

Prior to 2013, a prisoner had to show a prior physical injury suffered while in custody in order to bring an action for mental or emotional injury.

*See* 42 U.S.C. § 1997e(e) (effective Apr. 26, 1996, to Mar. 6, 2013).

Nevertheless, courts recognized that a sexual assault could constitute a

"physical injury" under the PLRA. *See Kahle v. Leonard*, 563 F.3d 736,

741–42 (8th Cir. 2009) (district court did not abuse its discretion in denying

correctional officer's physical-injury jury instruction where plaintiff alleged

she was raped by the correctional officer while incarcerated); *Liner v.*

*Goord*, 196 F.3d 132, 135 (2d Cir. 1999) (noting that sexual assaults

qualify as physical injuries as a matter of common sense and constitute

more than de minimis injury if they occurred); *Marrie v. Nickels*, 70 F.

Supp. 2d 1252, 1264 (D. Kan. 1999) (allegations that prison guard

caressed prisoner's buttocks and genitalia qualified as a physical injury

under § 1997e(e) to preclude dismissal).

Section 1997e(e) was amended in 2013, however, to add language

pertaining to the commission of a "sexual act." *See* Violence Against

Women Reauthorization Act of 2013, Pub.L. 113-4, Title XI, § 1101(a), 127

Stat. 134 (2013). Section 1997e(e) now expressly permits a prisoner to

bring an action for mental or emotional injury suffered while in custody from

the commission of a "sexual act" as defined in § 2246—absent a prior

showing of physical injury. *See Oxendine-Bey v. Harihan*, No. 5:12-CT-

03084-FL, 2015 WL 5331809, at *6 (E.D.N.C. July 22, 2015).

Section 2246 defines a "sexual act" as:

(A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;

(B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;

(C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or

(D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person . . . .

§ 2246(2). The 2013 amendment therefore clarified the specific actions which permit a prisoner to bring a claim for mental or emotional injury for a sexual assault absent physical injury.

Plaintiff says he suffered emotional damages from the sexual abuse in this case. Thus, absent physical injury he must demonstrate that he meets the definition of "sexual act" under § 2246 to seek compensatory and punitive damages on his sexual abuse claim.

The evidence, viewed in the light most favorable to the Plaintiff, demonstrates that a hand touched Plaintiff's buttocks, a finger touched—but did not penetrate—Plaintiff's anus, and a hand grabbed his

testicles. None of these actions meet the definition of a "sexual act" under § 2246. Instead, these actions constitute, at most, "sexual contact" under § 2246. *See* § 2246(e) ("the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person," is defined as "sexual contact"). "Sexual contact," however, is not the same as "sexual act" under § 2246. *See Mattison v. Williams*, No. 5:14-cv-187-OC-29PRL, 2015 WL 476183, at *3 (M.D. Fla. Feb. 5, 2015). Accordingly, because Plaintiff has failed to demonstrate that Defendants committed a sexual act as defined in § 2246, Plaintiff's request for compensatory and punitive damages on his sexual abuse claim should be dismissed.

Furthermore, while Plaintiff would normally be permitted to proceed with his sexual abuse claim seeking nominal damages from Defendants Pugh, West, and Lathan in their individual capacities, the undisputed evidence demonstrates that Plaintiff does not know which Defendant's finger and/or hand touched and grabbed him and Plaintiff felt only one hand. Moreover, there is no evidence, nor are there even any allegations, that the other two Defendants failed to intervene or somehow encouraged whichever Defendant touched and grabbed Plaintiff. Plaintiff therefore

cannot prevail on his sexual abuse claim. See *Boxer X*, 437 F.3d at 1111
(a sexual abuse claim under the Eighth Amendment includes a subjective
component, which requires the prison official have a "sufficiently culpable
state of mind"). Plaintiff's sexual abuse claim is therefore due to be
dismissed.

### c.    Racial Discrimination

Plaintiff's claim for racial discrimination arises under the equal
protection clause of the Fourteenth Amendment. To prevail on his claim
Plaintiff must establish that he was treated differently from other similarly
situated individuals and that the differential treatment was based on race.
*Lozman v. City of Riviera Beach*, 39 F. Supp. 3d 1392, 1411 (S.D. Fla.
2014) (citing *Harlen Assocs. v. Inc. Village of Mineola*, 2173 F.3d 494, 499
(2d Cir. 2001)). Plaintiff, however, fails to even allege, much less provide
evidence, that he was treated differently from other similarly situated
individuals or that the differential treatment was based on race. While
derogatory comments such as those Plaintiff says Defendants made are
highly inappropriate in any situation, the comments, without more, do not
rise to the level of a constitutional violation.[9]

---

[9] Even assuming Plaintiff brought his claim under the Eighth Amendment alleging
cruel and unusual punishment based on Defendants' derogatory racial comments he
would nonetheless not be entitled to relief. *See Anderson v. Pullom*, No. 2:12-CV-521-
WHA, 2012 WL 3846399, at *1 (M.D. Ala. Aug. 13, 2012) (collecting cases

Furthermore, Plaintiff does not allege, nor has he provided any evidence demonstrating that he suffered any type of physical or emotional injury from Defendants' alleged comments. Plaintiff's racial discrimination claims against Defendants in their individual capacities should therefore be dismissed.

## III. CONCLUSION

Upon due consideration, it is **ORDERED**:

1.    Plaintiff's motion for leave to file an amended complaint, ECF No. 46, is **GRANTED**.

2.    The **Clerk** is directed to docket a copy of the amended complaint attached to the motion for leave to file an amended complaint (ECF No. 46 at 2–10) as a separate docket entry; and

It is respectfully **RECOMMENDED** that:

1.    Defendants' Motion for Summary Judgment, ECF No. 39, should be **GRANTED** in part and **DENIED** in part.

**IN CHAMBERS** at Gainesville, Florida, this 22nd day of November 2017.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

---

demonstrating that "[d]erogatory, demeaning, profane, threatening or abusive comments made by an officer to an inmate, no matter how repugnant or unprofessional, do not rise to the level of a constitutional violation").

*Case No: 3:16-cv-446-MCR-GRJ*

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**